IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOUGLAS JAMES CROSSEN,

                Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

20-cv-646-wmc

As authorized by 42 U.S.C. § 405(g), plaintiff Douglas James Crossen seeks judicial review of the Social Security Commissioner's final determination upholding an opinion that he was not disabled. On appeal to this court, plaintiff maintains that Administrative Law Judge ("ALJ") Michael Schaefer erred in two independent respects: (1) playing doctor by interpreting a recent MRI and determining corresponding work limitations without seeking the input of a medical expert; and (2) improperly assessing the weight due opinions of the psychological consultative examiner. Finding merit in both of plaintiff's challenges, the court will remand this case for further review.

BACKGROUND[1]

**A. Overview**

Plaintiff Douglas James Crossen has a high school education, is able to communicate in English, and has past work experience as an ice cream chef, a sexton, a gun welder, a carpenter, and a heating and air conditioner installer helper, all of which are considered

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #14.

medium or heavy exertion jobs under the Social Security regulations. The ALJ found that Crossen had not engaged in substantial gainful activity since January 1, 2016.[2]

Crossen applied for social security disability benefits and for supplemental security income on April 24, 2017. With a birth date of October 2, 1970, he was 45 years old at the time of the putative disability onset date, defining him as a "younger individual." 20 C.F.R. §§ 404.1563, 416.963. Crossen claims disability based on numbness in hands and feet, problems standing and walking, depression, anxiety, suicidal, alcohol and drug addiction issues, meniscus problems in knees, and possible agoraphobia. (AR 97-98.)

**B. ALJ Decision**

ALJ Schaefer held an in-person hearing on April 2, 2019, at which Crossen appeared personally and by counsel. On July 17, 2019, the ALJ issued an opinion finding Crossen had not been under a disability within the meaning of the Social Security Act through the date of the hearing. As an initial matter, the ALJ determined that Crossen had the following severe impairments: "major depressive disorder; attention deficit hyperactivity disorder (ADHD); generalized anxiety disorder; history of bilateral carpal tunnel syndrome; left cubital tunnel syndrome; lumbar spine degenerative disc disease; right knee pain, status post arthroscopic meniscectomy; and obesity." (AR 16.) Crossen neither

---

[2] Although plaintiff originally claimed a disability onset date of January 23, 2015, the ALJ concluded that Crossen's earnings from work with an ice cream company in 2015, specifically from January 23, 2015, through December 31, 2015, exceeded the threshold for substantial gainful activity for that year. (AR 15.) As such, the ALJ's opinion found that the relevant disability period ran from January 1, 2016, through the date of the hearing, and plaintiff does not challenge that finding on appeal.

challenges these findings nor the ALJ's conclusion that certain, other impairments were not severe, including opiate use disorder and alcohol use/abuse.

Next, the ALJ considered whether Crossen's impairments or combination of impairments met or medically equaled various Listings. (AR 22-25.) Although Crossen does not challenge the ALJ's findings that they did not, his consideration of the paragraph B criteria for purpose of evaluating the mental impairment Listings is arguably relevant to plaintiff's challenge to the weight given the opinion of the consultative examiner Beth Jennings, Ph.D. Specifically, the ALJ concluded that Crossen had: no more than mild limitations in understanding, remembering and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and moderate limitations in adapting or managing oneself. (AR 17-18.) These conclusions were consistent with those offered by Dr. Jennings, except for her opinion that Crossen had marked limitations in responding to work stress, which, in turn, corresponded to marked limitations in adapting or managing oneself.

Rejecting Dr. Jennings' opinion with respect to this last limitation, the ALJ went on to determine that Crossen had the residual functional capacity ("RFC") to perform light work with the following additional exertional limitations: "requires the option to alternate positions at the work station between sitting and standing as often as every 30 to 60 minutes for approximately 5-10 minutes, but will not need to leave the work station or otherwise be off-task from work performance as a result"; "can occasionally crouch, stoop, kneel, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds"; "can frequently balance and . . . use his bilateral upper extremities for handling and finger";

and "must avoid more than occasional exposure to extreme[] vibration or to workplace hazards." (AR 19.) As for his residual mental capacity, the ALJ concluded that Crossen is "limited to understanding, remembering, and carrying out simple instructions and routine tasks (at GED Reasoning level 3 or below), in a work environment with few, if any, changes in work duties and no fast-paced production requirements . . . "; and "is limited to only occasional, brief and superficial interaction with the public and only occasional interactions with co-workers or supervisors." (*Id.*)

In formulating this RFC, the ALJ also addressed Crossen's own statements in various, prehearing forms and during the hearing regarding the symptoms of his physical and mental impairments, finding his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) Reviewing Crossen's psychiatric impairments in particular, the ALJ acknowledged that even with regular treatment through Journey Mental Health Center for the relevant period, including regular medication management and therapy, he made two suicide attempts during the relevant disability period -- one on May 31, 2016, resulting in him being in a coma for ten days, and requiring almost one-month of inpatient treatment, and a second attempt on March 20, 2017. (AR 21.)[3] As the ALJ also noted, however, records reflect that at times, Crossen displayed a "euthymic mood, appropriate affect, normal thought processes and content," among other more positive psychiatric findings. (AR 20.)

---

[3] The record reflects that Crossen has attempted suicide on multiple times, including once with a firearm, which was fortunately jammed and did not fire. (AR 1610.)

Further, in an effort "to more fully evaluate the claimant's mental functioning," Crossen underwent a psychological consultative examination with Beth Jennings, Ph.D., on August 4, 2017. In reviewing Jennings' report, the ALJ noted that:

> On examination, the claimant was soft spoken, socially appropriate, and cooperative. He reported feelings of worthlessness and hopelessness with a flat and congruent affect. The claimant had logical, coherent, and goal directed thoughts and had no more than mild limitations in memory. He was able to follow the conversation without difficult and could follow a three-step command. Dr. Jennings noted the claimant had evidenced problems with insight and judgment as he has a history of suicide attempts under stress. Dr. Jennings assessed the claimant with moderate major depressive disorder and polysubstance abuse disorder in early remission.

(AR 21.)

The ALJ also reviewed the record with respect to Crossen's physical impairments, noting his right knee injury in 2015 and treatment for a medical meniscus tear; carpal tunnel syndrome of the left wrist, also in 2015; injury to his back while working in August 2015; numbness and pain in his right thigh beginning in 2016; bilateral knee and ankle pain with numbness in 2016; and ongoing treatment for lower back pain through 2018. Material to plaintiff's challenges on appeal, the ALJ specifically found that "[a] recent MRI of the lumbar spine revealed moderate degenerative disc disease" (AR 24), and in crafting the RFC, the ALJ relied on this MRI to include a "sit/stand option" (AR 26).

Finally, the ALJ found that Dr. Jennings' opinion was "somewhat persuasive as it is generally consistent with, and supported by, a longitudinal review of the [medical] record as well as [her consultative examination] report." (AR 25.) However, the ALJ still rejected Jennings' finding of marked limitations in responding appropriately to work stress, because

5

(1) there was "insufficient evidence" and (2) "[t]his part of the opinion is not consistent with the record." (*Id*.)

With the assistance of the vocational expert, the ALJ went on to conclude that Crossen is not able to perform any past relevant work given that his jobs were either medium or heavy exertion work, but there were jobs in significant numbers in the national economy that Crossen could perform, including an addresser, checker I and garment sorter. (AR 28.) Based on these findings, the ALJ concluded that plaintiff was not under a disability through the date of the ALJ's decision.

OPINION

A federal court reviews a final decision by the Commissioner of Social Security under a well-settled standard. Specifically, findings of fact are "conclusive" if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," therefore, this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions

of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Accordingly, this court must review plaintiff's two challenges on appeal under a deferential, yet discerning, standard.

## I. Consideration of MRI

Plaintiff contends that the ALJ erred in his consideration of the November 2018 MRI by evaluating it without the aid of a medical expert and considering that evidence in formulating Crossen's RFC. Specifically, in evaluating Crossen's physical limitations, the ALJ purportedly relied on the state agency medical consultant Sai Nimmagadda's opinion that Crossen could perform light exertional level work with additional restrictions described above in the RFC, while finding that opinion was only "somewhat persuasive" because a recent lumbar MRI "supports finding the claimant would need a sit/stand option." (AR 26.) Moreover, the MRI at issue was taken on November 30, 2018, and as the ALJ noted, post-dated Dr. Nimmagadda's review, as well as that of any other doctor's review of the record. However, the MRI report noted

> Degenerative changes which are most severe at L4-L5[;] there is severe disk space narrowing, diffuse bulging of the disk, moderate facet degenerative change, mild bilateral neural foraminal narrowing, and mild to moderate central spinal canal narrowing.

(AR 1746.) Critically, the MRI said nothing about its impact on plaintiff's physical limitations, with respect to "sit/stand option" or otherwise.

Directing the court to *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014), plaintiff argues that the "ALJ must submit an MRI for medical evaluation and the corresponding limitations as an ALJ lacks the medical knowledge and expertise to render appropriate work

7

limitations." (Pl.'s Opening Br. (dkt. #19) 14 (citing *Goins*, 764 F.3d at 680).) As an initial matter, the MRI is new evidence, because there is no other MRI of plaintiff's lumbar spine in the record. However, the fact that the MRI is new does not necessarily require a fresh review of the record by a medical expert. Instead, the evidence must be material or decisive. *See Phillips v. Saul*, No. 19-CV-778-WMC, 2020 WL 3118678, at *5 (W.D. Wis. June 12, 2020) ("[T]he dividing line between the *Goins* line of cases and the *Keys* [*v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017)] line is the potential for this new medical evidence to be decisive.").

In response, therefore, the Commissioner argues that this new MRI does not correspond with any new or worsened symptoms, suggesting that it requires no further review by a medical expert. (Def.'s Opp'n (dkt. #22) 7.) In so arguing, however, defendant frames the requirement that the new evidence must be material or decisive too narrowly. To be material or decisive, the MRI need not correspond with worsened symptoms; instead, it could be viewed as validating his reports of back pain, something the reviewing physicians may find places a new light on plaintiff's subjective report of symptoms.

More importantly, the *ALJ* himself viewed this evidence as material in determining that the MRI warranted an additional "sit/stand option" exertional limit. The Commissioner fails completely to respond to this argument, much less justify the ALJ's ability to interpret the MRI *and* opine as to it requiring a sit/stand option, especially since the MRI report itself does neither. Accordingly, the court agrees with plaintiff that this challenge alone warrants a remand.

## II. Evaluation of Opinion of Consultative Psychologist Beth Jennings, Ph.D.

Plaintiff also challenges the ALJ's treatment of the opinion of consultative examiner Psychologist Beth Jennings. Specifically, plaintiff argues the ALJ failed to explain adequately his reasons for rejecting Jennings' opinion that Crossen would have marked limitations in responding appropriately to work stress, a component of the fourth paragraph B criteria, adapting or managing oneself. Certainly, an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," but "a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

As detailed above, Dr. Jennings concluded that Crossen "would be markedly limited" in "his ability to withstand work stress," an opinion she expressly formed based on "his affective instability, demonstrated past reactions to stressful situations, and affective instability at this time." (AR 1614.) In her report, Jennings also noted Crossen's "several suicide attempts, often when emotionally upset or overwhelmed," including a recent attempt in response to his ex-wife refusing to allow their children to attend his father's birthday party. (AR 1612-13.)

In contrast, the ALJ flatly rejected Jennings' finding of marked limitations in Crossen's ability to withstand work stress would likely have equated to marked limitations in adapting or managing oneself, without any meaningful explanation for doing so. Indeed, as described above, the ALJ simply states there was "insufficient evidence" and "[t]his part of the opinion is not consistent with the record." (AR 25.) At minimum, the ALJ's conclusory statements fail to build a logical bridge between his rejection of Dr. Jennings'

9

opinion and the record.  Equally important, the statements appear to have *no* support in the record.  Perhaps the ALJ relied on the state agency medical consultant Kyla Holly's review of Jennings' report, but Dr. Holly does not even mention Jennings' finding of marked limitations with resect to responding to work stress, much less provide any record support for rejecting this opinion.  Even if she had, the law is clear that "a contradictory opinion of a non-examining physician" does not form an independent, adequate basis for rejecting a consulting examiner's opinion.  *Gudgel*, 345 F.3d at 470.  Accordingly, the court agrees with plaintiff that this error requires remand as well.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Douglas James Crossen's application for social security disability benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered this 9th day of July, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge